IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CASE NO. 12-3442

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DARNELL OWENS,
Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Ohio
Eastern Division

BRIEF OF PLAINTIFF-APPELLEE

Steven D. Jaeger
The Jaeger Firm PLLC
23 Erlanger Road
Erlanger, Kentucky 41018
Telephone No: (859) 342-4500
Facsimile No: (859) 342-4501
sdjaeger@thejaegerfirm.com

Counsel for Defendant-Appellant

STEVEN M. DETTELBACH
United States Attorney

By:   Laura McMullen Ford
Assistant United States Attorney
United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Telephone No: (216) 622-3817
Facsimile No: (216) 522-7358
Laura.Ford@usdoj.gov

Counsel for Plaintiff-Appellee

i

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . .  iv

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

I.    THE DISTRICT COURT PROPERLY DETERMINED THAT OWENS
      KNOWINGLY AND VOLUNTARILY WAIVED HIS RIGHT TO
      COUNSEL, WHERE THE COURT ASKED OWENS SEVERAL
      QUESTIONS ABOUT HIS DECISION, WARNED HIM ABOUT THE
      RISKS OF SELF-REPRESENTATION AND NOTHING IN THE TRIAL
      RECORD PROVIDED A BASIS FOR THE COURT TO QUESTION *SUA
      SPONTE* OWENS' MENTAL COMPETENCY.. . . . . . . . . . . . . . . . . . . . 20

II.   THE EVIDENCE SUFFICIENTLY ESTABLISHED THAT OWENS
      KNOWINGLY POSSESSED THE AMMUNITION FOUND IN THE
      BACK POCKET OF THE SWEATPANTS HE WAS WEARING.. . . . . . 30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION.. . . . . . . 36

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS. . . . . . 38

ii

## <u>TABLE OF AUTHORITIES</u>

**<u>FEDERAL CASES</u>**                                             **<u>PAGE(S)</u>**

<u>Adams v. United States ex rel. McCann</u>, 317 U.S. 269 (1942). . . . . . . . . . . . . . 21

<u>Faretta v. California</u>, 422 U.S. 806 (1975). . . . . . . . . . . . . . . . . . . . . . 18, 21, 27, 29

<u>Godinez v. Moran</u>, 509 U.S. 389 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>Johnson v. United States</u>, 520 U.S. 461 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>United States v. Abboud</u>, 438 F.3d 554 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . 30

<u>United States v. Alkazoff</u>, 1992 WL 180179 (6th Cir. 1992) (unpublished). . . . . 28

<u>United States v. Back</u>, 2008 WL 5046442 (6th Cir. 2008) (unpublished). . . . 24-26, 28, 29

<u>United States v. Blackwell</u>, 459 F.3d 739 (6th Cir. 2006). . . . . . . . . . . . . . . . . . 30

<u>United States v. Campbell</u>, 549 F.3d 364 (6th Cir. 2008). . . . . . . . . . . . . . . . . . 32

<u>United States v. Chesney</u>, 86 F.3d 564 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . 27

<u>United States v. Cromer</u>, 389 F.3d 662 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . 20

<u>United States v. Graham</u>, 622 F.3d 445 (6th Cir. 2010). . . . . . . . . . . . . . . . . 30, 31

<u>United States v. Henry</u>, 429 F.3d 603 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . 27

<u>United States v. Hughes</u>, 505 F.3d 578 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . 31

<u>United States v. Humphrey</u>, 279 F.3d 372 (6th Cir. 2002). . . . . . . . . . . . . . . . . . 30

<u>United States v. Jemison</u>, 2009 WL 383683 (6th Cir. 2009) (unpublished). . . . . 27

iii

United States v. McAuliffe, 490 F.3d 526 (6th Cir. 2007). . . . . . . . . . . . . . . . . . 31

United States v. McBride, 362 F.3d 360 (6th Cir. 2004). . . . . . . . . . . . . . . . 20-22

United States v. McDowell, 814 F.2d 245 (6th Cir. 1987). . . . . . . 18, 22, 24, 27-29

United States v. Miller, 910 F.2d 1321 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . 22

United States v. Peters, 15 F.3d 540 (6th Cir. 1994). . . . . . . . . . . . . . . . . . . . . 30

United States v. Prince, 214 F.3d 740 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . 30

United States v. Reed, 141 F.3d 644 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . . . 32

United States v. Schreane, 331 F.3d 548 (6th Cir. 2003). . . . . . . . . . . . . . . . . . 31

United States v. Villarce, 323 F.3d 435 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . 31

United States v. Williams, 641 F.3d 758 (6th Cir. 2011). . . . . . . . . . . . . . . . 21, 22

United States v. Word, 1995 WL 730476 (6th Cir. 1995) (unpublished). . . . . . . 25

**FEDERAL RULES**

Fed. R. App. P. 34(a)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Fed. R. App. P. 34(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

**FEDERAL STATUTES**

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 26, 31, 32

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 4241(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 27, 31, 32

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

iv

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-appellee, the United States of America, believes that the facts and legal arguments are adequately presented in the briefs and record and that the decisional process would not be significantly aided by oral argument. Additionally, the government notes that defendant-appellant Darnell Owens has waived oral argument.  (Owens' Br., p. 1).  Thus, the government recommends that this case be decided on the briefs under Fed. R. App. P. 34(a)(2)(C) and (f).

1

## **JURISDICTIONAL STATEMENT**

The district court derived jurisdiction under 18 U.S.C. § 3231.  (R. 1:
Indictment, PageID 1).  The district court entered final judgment against
defendant-appellant, Darnell Owens, on March 30, 2012.  (R. 34: Judgment,
PageID 113).  Owens filed his timely notice of appeal on April 10, 2012.  (R. 35:
Notice of Appeal, PageID 119).  This Court reviews the final disposition of a
district court case under 28 U.S.C. § 1291.

2

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the district court properly determined that Owens knowingly and voluntarily waived his right to counsel, where the court asked Owens several questions about his decision, warned him about the risks of self-representation and nothing in the trial record provided a basis for the court to question *sua sponte* Owens' mental competency?

II.   Whether the evidence sufficiently established that Owens knowingly possessed the ammunition found in the back pocket of the sweatpants he was wearing?

3

## STATEMENT OF THE CASE

On June 28, 2011, a federal grand jury, in the Northern District of Ohio, returned a one count indictment charging Owens with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  (R. 1: Indictment, PageID 1).  A jury trial commenced before United States District Judge John Adams on November 21, 2011.  On November 22, 2012, the jury returned a guilty verdict. (R. 25: Verdict, PageID 100).

Consequently, on March 28, 2012, the district court sentenced Owens to a mandatory minimum 180 months (15 years) imprisonment as an Armed Career Criminal Act offender, followed by five years of supervised release and ordered Owens to pay a $100 special assessment.  (R. 33: Minutes, PageID 112).  The district court entered judgment on March 30, 2012.  (R. 34: Judgment, PageID 113).  Owens filed his notice of appeal on April 10, 2012.  (R. 35: Notice of Appeal, PageID 119).

4

## STATEMENT OF THE FACTS

Owens represented himself at his trial on a felon in possession of ammunition charge.  His sole defense was that the pants he was wearing, when a police officer conducted a protective frisk, belonged to his ex-girlfriend and, unbeknownst to him, contained a loaded magazine clip in the back pocket.  (R. 45: 11/21/11 Trial Tr., PageID 383-84).  The jury rejected this defense.

Self-representation Request at Arraignment

At his arraignment on August 31, 2011, Owens told the district court that he "looked up on my case from the law library books."  (R. 41: 8/31/11 Arraignment Tr., PageID 129).  Owens also said that he "refuse[d] counsel."  (Id.).  Owens then expressed his unwillingness to enter a plea to the indictment, stating that he "just den[ied] the Indictment in general," which the court considered a "not guilty" plea.  (Id., PageID 130-31).  Owens also commented: "This right here, . . . it don't pertain to me, nothing, the clip, the bullets, none of that."  (Id., PageID 133).

Before ruling on Owens' self-representation request, the court asked several questions, including the defendant's age and whether he was under the influence of any drugs, medications or alcohol that might affect his ability to understand the proceedings.  (Id., PageID 134).  The court also asked if Owens:

(1) ever represented himself in a criminal matter;

5

(2) ever studied law;

(3) understood the consequences of conviction for a felon in possession charge, in violation of 18 U.S.C. § 922(g)(1), namely, a sentence of 15 years to life imprisonment;

(4) was familiar with the Federal Rules of Evidence;

(5) was familiar with the Federal Rules of Criminal Procedure; and

(6) understood "that a trained lawyer would better serve [his] interests in this case."

(Id., PageID 135-38).

The court explained to Owens:

THE COURT: I'm telling you those things so that you understand that it's clear that a trained lawyer would better serve your interests in this case, could represent you and defend you in this matter.

It's unwise of you to try to represent yourself, you're not familiar with the law, you do not know any of the rules that apply here in federal court with regard to trying a case, or anything else. You don't know the Rules of Evidence, you don't know the Rules of Criminal Procedure.

And this is a, in my mind, a serious error on your part, an error in judgment, to try to represent yourself in this matter.

Do you understand that?

THE DEFENDANT: Yes, sir.

(Id., PageID 138-39).

6

The court then asked if Owens still wanted to represent himself after hearing "the consequences and . . . advising you of why it is that I think you should . . . be represented by counsel." (Id., PageID 139).  Owens responded affirmatively, stating that he would "proceed *pro se* in the matter." (Id.).  As such, the court found that Owens "knowingly and voluntarily waived his right to counsel." (Id.).

After reading the indictment aloud (id., PageID 140-41), the court asked if Owens understood "the nature of the charge against [him]."  Owens replied, "Yes, sir." (Id., PageID 141).  When asked to enter a plea to the charge, Owens again "den[ied] the Indictment, in general." (Id.).

After confirming that Owens understood his reciprocal discovery obligation, the court urged Owens to reconsider his self-representation decision:

> THE COURT:  If you change your mind at some point in the not too distant future and wish the appointment of counsel, then I will consider appointing same.
>
> I would strongly encourage you to, once again, reconsider your decision.  Obviously, 15 years to life is a long time.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You're not familiar with the federal system, so I will tell you this. 15 years in the federal system, 20 years in the federal system means just that, 15 or 20 years. There's no such thing as early release. . . . You will do 15 years, subject to some time for good time, or you will do 18 or 20 or up to life, depending on what the consequences may be.  15 years is the mandatory minimum. . . .

7

How old are you?

HE DEFENDANT: 36, sir.

THE COURT: Okay. . . . you'll be over 50 years old, at least, if the minimum is imposed . . . .

(Id., PageID 147-48).

The court also told Owens that, "to persuade a jury or . . . . to adequately represent yourself and defend yourself in this case," he needed an attorney. (Id., PageID 150). The court explained that:

> the reason I keep telling you exactly what the consequences are is because there is a high likelihood, without an attorney -- competent, capable, attorney -- to represent you, there is a strong likelihood that you're going to be convicted, and if you are, then the consequences are extraordinary.

> This is not like . . . the time you spent in state court. . . . It's going to be many, many, many years.

> THE DEFENDANT: Okay. Your Honor, I --

> THE COURT: So you think about it.

(Id.). The court also advised Owens if he represented himself at trial, he would "be treated just like anyone else." Specifically, Owens would "follow the rules." (Id., PageID 151). Owens replied affirmatively when the court asked if he knew the consequences if the government proved its case against him. (Id.). When

8

asked if he understood that he would encounter difficulty presenting evidence if he represented himself during trial, Owens replied, "Yes, sir." (Id.).

Pretrial Decision to Obtain Counsel

During a pretrial hearing approximately six weeks later, on October 11, 2011, Owens said he wanted appointed counsel. (R. 42: 10/11/11 Pretrial Tr., PageID 157). The district court granted Owens' request and "vacate[d]" the October 24, 2011 trial date because it would provide "insufficient time for an attorney to review the evidence . . . and be prepared either for trial or to decide what if any negotiations . . . might be in Mr. Owens' best interest." (Id., PageID 158). Afterward, the court said it was "a wise decision on your [Owens'] part given the possible consequences." (Id., PageID 158-59).

Renewed Self-representation Request

At a status hearing, Owens told the court that he did not realize that accepting counsel's assistance would change his trial date and expressed dissatisfaction with maintaining representation. (R. 48: 10/26/11 Status Hrg. Tr., PageID 565). The court explained that it was required to provide an attorney 30 days to prepare for trial. (Id.). The court also explained that "the mere fact we did not have a trial as soon as you would like should not be reason for you to reject the appointment of an attorney and try to represent you given the stakes in this case."

9

(Id., PageID 567).  The court then reminded Owens of the 15-year minimum penalty if convicted, noting that Owens "would be 51 . . . if . . . convicted and that were to be the sentence."  (Id.).

The court explained that counsel would assist in responding to the government's evidence, determining whether to file pretrial motions and protecting Owens' appellate rights, emphasizing again the "extraordinary" consequences if convicted.  (Id., PageID 568-69).  Owens responded that, if he received a sentence of 15 years to life imprisonment for a conviction based on "some bullets that weren't mine," then he would "fight in appeal court" and, nevertheless, wanted "to proceed *pro se* just to stop continuances."  (Id., PageID 569).  When the court explained that self-representation would not "affect the trial date" because trial could not be scheduled sooner, Owens said: "Sir, I understand." (Id., PageID 570; see also id. PageID 572-73).  The court also emphasized the risk of not preserving adequately his appellate rights if Owens proceeded without counsel.  (Id., PageID 571; see also id., PageID 580).

While the court acknowledged Owens' right to self-representation, the court advised Owens that it was "against [his] best interest" (id., PageID 572), and would not "have a great bearing on the trial date."  (Id., PageID 573).  Owens again chose self-representation.  (Id., PageID 574).  When discussing Owens'

10

decision, the court re-emphasized that Owens did not have legal training or skill to effectively defend himself (id., PageID 574-75), including cross-examining witnesses. (Id., PageID 576). The court urged Owens not to "do yourself more harm simply because of your frustration about the trial date." (Id., PageID 576). When Owens said he "would just like to go *pro se*," the court accepted Owens' decision. (Id., PageID 577).

When Owens later interrupted a discussion about scheduling the trial to apologize for the misunderstanding about the trial date, the court replied that "there's no need for an apology." (Id., PageID 578). The court then commented that Owens could not represent himself effectively. (Id.). "You're going to act in your own best interest falling on your sword, and not having an attorney represent you . . . it's not a good decision simply because you're unhappy about the trial date being continued." (Id.). Owens explained that "[i]t's not so much that [the trial date], but, . . . I don't feel I should be standing . . . here right now about something that ain't even mine[]." (Id.). Explaining again counsel's ability to "do the things that you [Owens] cannot do" by challenging the government's evidence and cross-examining witnesses (id.), the court emphasized that, "if I were a defendant, I wouldn't represent myself. I would have an attorney. . . . Even sitting where I'm sitting and having been here for this court and state court." (Id., PageID 579).

11

After restating that self-representation was not in Owens' "best interest," the court

told Owens that he "need[ed] to think long and hard about the consequences."

(Id.).

Discussions about Trial

At the November 8, 2011 pretrial, Owens said he did not agree with

providing a preliminary statement and reading the indictment at trial.  (R. 43:

11/8/11 Pretrial Tr., PageID 165).  When asked about his objection, Owens said:

"We should be going to trial about the Court lacks subject matter and the fact that

I didn't do anything that constitute [sic] interstate commerce. . . . I didn't bring no

bullets across no state line. . . ." (Id.).  The court explained that the government

was not required to prove that Owens "carried the bullets across state line[s],"

rather it had "to establish that the ammunition itself traveled . . . in interstate

commerce.  It's not about you.  It's about the bullets and ammunition . . . , whether

it traveled across state lines."  (Id.).  When the court explained that the case was

not about Owens' travel, but the ammunition, which the government likely would

attempt to prove was manufactured outside Ohio, Owens replied, "Okay.  I

understand now."  (Id., PageID 165-66).

The court further explained that it had seen the same jurisdictional argument

before and it was not a "valid defense."  (Id., PageID 166).  As such, the court told

12

Owens that, if someone had recommended raising the issue, it was not "the kind of advice you should rely upon." (Id., PageID 166). Owens then clarified that he read about it "in a law book." (Id.).

After further discussion about trial procedure, Owens asked if he could "enter a motion to suppress" because the bullets did not belong to him. (Id., PageID 177). The court explained that Owens' claim about the bullets belonging to someone else was "part of [his] defense." (Id.). The court also explained that a suppression motion, even if a proper basis existed, should have been filed "weeks ago." (Id., PageID 178). Additionally, the court reminded Owens about the difficulty of self-representation. (Id.). When asked if he would reconsider having an appointed attorney, Owens said, "No." (Id., PageID 178-79). Thus, the court decided to appoint standby counsel to provide "technical assistance." (Id., PageID 179). Before concluding the hearing, the court emphasized the benefits of having appointed counsel (see id., PageID 192-93, 195-97), but said the court was "prepared for" Owens' self-representation. (Id., PageID 197).

Trial

The evidence at trial reflected that, while patrolling in a marked cruiser in Warren, Ohio, around midnight on May 27, 2011, Police Officer David Weber heard loud music coming from a white Chrysler more than 50 feet away, which

13

violated a city ordinance.  (R. 46: Weber, 11/22/11 Trial Tr., PageID 395-96, 398).

When Weber activated his cruiser's overhead lights to initiate a traffic stop, the

vehicle accelerated.  (Id., PageID 398).  Consequently, Weber activated the

cruiser's siren and pursued the vehicle.  (Id.).  After several turns, both the driver,

later identified as Owens, (id., PageID 400), and the passenger "bailed out" while

the vehicle was still moving.  (Id., PageID 398).  "[T]he [empty] vehicle continued

. . . until it came to rest into somebody's property."  (Id.).

Weber chased Owens on foot through yards and into an alley, but eventually

"lost sight of him."  (Id., PageID 399-400).  Owens was wearing black sweatpants

and a black hoodie.  (Id., PageID 400-01).

After hearing Owens' last whereabouts, Officer Timothy Ladner and other

officers "maintained a perimeter."  (R. 46: Ladner, 11/22/11 Trial Tr., PageID

413).   While shining his flashlight into yards where someone could hide, Ladner

spotted Owens lying in overgrown grass.  (Id., PageID 414).  When Owens stood,

Ladner ordered him to "Get back down on the ground."  (Id., PageID 414-15).

Owens was wearing black sweatpants and a t-shirt.  (Id., PageID 415).

Officer Brian Martinek, who heard Ladner's voice, arrived and helped

handcuff Owens.  (Id.; R. 46: Martinek, 11/22/11 Trial Tr., PageID 422).  A frisk

revealed a magazine for a semi-automatic handgun in Owens' back pocket.  (R.

14

46: Ladner, 11/22/11 Trial Tr., PageID 414; R. 46: Martinek, 11/22/11 Trial Tr.,

PageID 423).  The magazine was loaded with 12 bullets.  (R. 46: Martinek,

11/22/11 Trial Tr., PageID 423).

During cross-examination, Ladner agreed that Owens may have said that the

sweatpants did not belong to him.  (Id., PageID 419).  Martinek also recalled

Owens saying that they were not his pants.  (R. 46: Martinek, 11/22/11 Trial Tr.,

PageID 426).

Upon seeing Owens in handcuffs, Weber noticed that Owens was no longer

wearing the hoodie.  (R. 46: Weber, 11/22/11 Trial Tr., PageID 401).  Efforts to

find both the hoodie that Weber saw Owens wearing earlier and a suspected

handgun were unsuccessful.  (R. 46: Ladner, 11/22/11 Trial Tr., PageID 416; R.

46: Martinek, 11/22/11 Trial Tr., PageID 424).  Ladner testified that it was dark

when police searched.  (Id., PageID 416).  Additionally, the area included vacant

properties with overgrown lawns, which offered numerous hiding places.  (Id.,

PageID 416-17; R. 46: Martinek, 11/22/11 Trial Tr., PageID 422, 425).  Ladner

said there were storm drains and sewers in the area as well.  (R. 46: Ladner,

11/22/11 Trial Tr., PageID 417).

Detective Sergeant John Yuricek, Warren Police Department, who is

assigned to the ATF's Task Force, testified that, approximately a week after

15

Owens' arrest, he recovered from the Warren Police Department the magazine seized from Owens.  (R. 46: Yuricek, 11/22/11 Trial Tr., PageID 429-30).  The magazine contained 12 rounds of .9 millimeter caliber ammunition.  (Id., PageID 430, 435).  Yuricek removed the bullets and separated them by manufacturer before repackaging them.  (Id.).  Based on the headstamps on the ammunition, Yuricek determined that ten rounds were manufactured by Winchester Western and the remaining two rounds were manufactured by Federal.  (Id., PageID 431).

ATF Special Agent Nicholas Vouvalis testified that ten of the .9 millimeter bullets were manufactured by Winchester in Illinois or Mississippi.  (R. 46: Vouvalis, 11/22/11 Trial Tr., PageID 442, 444).  The ten bullets included silver tip hollow points, some made of copper and another casing made of brass.  (Id., PageID 442-44).  Vouvalis testified that the variation in colors indicated that the ammunition came from different boxes.  (Id., PageID 441-442).  Vouvalis determined that the other two bullets were manufactured by Federal Cartridge Company in Minnesota.  (Id., PageID 444-45).

Seretha Wilson testified in Owens' defense.  Wilson dated Owens for several months until June 2011.  (R. 46: Wilson, 11/22/11 Trial Tr., PageID 454-55).  Wilson testified that, in February 2011, she purchased a Smith and Wesson .9 millimeter handgun for $300 from her cousin for personal protection.  (Id., PageID

16

451-52, 254-55).  Wilson had three magazine clips for the gun.  (Id., PageID 452). Wilson said she loaded the magazines with bullets from a single box of ammunition that she purchased from Walmart in early February 2011.  (Id., PageID 457-58).

Wilson testified that the handgun was legal for her to possess.  (Id., PageID 451).  Wilson recalled that, when selling her gun to a friend of a friend in May 2011, she forgot that one of the magazine clips was in the pocket of her sweatpants, which she left folded on the back seat of her Chrysler.  (Id., PageID 451, 453, 456-59).  Later that evening, Owens drove her vehicle and, sometime thereafter, put on her sweatpants which contained the third clip.  (Id., PageID 460).

At the close of the government's case-in-chief, the district court denied Owens' motion for a judgment of acquittal.  (R. 46: 11/22/11 Trial Tr., PageID 448-49).  The court also denied Owens' renewed motion, concluding that, "viewing the evidence in the light most favorable to the United States, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  (Id., PageID 464).

Sentencing

The sentencing transcript reflected that Owens previously struggled with depression.  (R. 47: 3/28/12 Sentencing Tr., PageID 548, 551).  Owens also

17

reportedly had prior "suicidal episodes."  (R. 47: 3/28/12 Sentencing Tr., PageID

551; <u>see also</u> <u>id.</u>, PageID 538).  This information was revealed, post-trial, in the

presentence report.  (PSR, p. 15).  During a discussion with the district court,

Owens asked for appointed appellate counsel.  (<u>Id.</u>, PageID 547).

18

## SUMMARY OF THE ARGUMENT

The district court conducted a thorough inquiry into Owens' requests for self-representation, as required by <u>United States v. McDowell</u>, 814 F.2d 245, 250 (6th Cir. 1987), and properly determined that Owens knowingly and voluntarily waived counsel. Owens' reliance on instances where he misunderstood procedural issues does not establish that he was mentally incompetent to waive counsel, as similar misunderstandings would be expected of any layperson proceeding *pro se*. It is such misunderstandings that make self-representation unwise; yet, the Supreme Court has held that a defendant has a constitutional right to represent himself. Further, nothing in the trial record provided the district court a reasonable cause to question *sua sponte* Owens' competence. Owens' past depression and suicidal tendencies, discussed for the first time after the verdict at sentencing, do not demonstrate that there was reasonable cause to doubt Owens' competency when he waived counsel before trial. While Owens' decision to represent himself was not in his best interest, his exercise of his constitutional right to self-representation, <u>Faretta v. California</u>, 422 U.S. 806, 835 (1975), does not demonstrate mental incompetence.

At the close of trial, the district court correctly denied Owens' motion for judgment of acquittal. The evidence showed that police seized a loaded magazine

19

clip from the back pocket of the sweatpants Owens was wearing.  The evidence

further reflected that, before the frisk, Owens fled from an officer attempting to

conduct a traffic stop by exiting his vehicle while it was still moving and running

to abandoned property where he hid from police.  Under the governing standard of

review in which the evidence, both circumstantial and direct, must be viewed in

the light most favorable to the government and giving the jury's verdict the benefit

of all inferences that reasonably may be drawn from the evidence, the

government's case was sufficient to show that Owens actually and knowingly

possessed the ammunition seized during the frisk.  Further, given the

inconsistency between the evidence that there were different types and colors of

bullets in the magazine and the testimony of Wilson, the alleged owner of the

sweatpants and ammunition, that she loaded the magazine with bullets from the

same box, the jury was entitled to reject as incredible Owens' defense denying

knowledge about the ammunition in the back pocket of the sweatpants he was

wearing.

20

## ARGUMENT

**I.   THE DISTRICT COURT PROPERLY DETERMINED THAT OWENS KNOWINGLY AND VOLUNTARILY WAIVED HIS RIGHT TO COUNSEL, WHERE THE COURT ASKED OWENS SEVERAL QUESTIONS ABOUT HIS DECISION, WARNED HIM ABOUT THE RISKS OF SELF-REPRESENTATION AND NOTHING IN THE TRIAL RECORD PROVIDED A BASIS FOR THE COURT TO QUESTION *SUA SPONTE* OWENS' MENTAL COMPETENCY.**

**A.   Standard of Review**

This Court has observed "two trends" in reviewing on appeal a defendant's claim about the validity of his waiver of counsel.  United States v. McBride, 362 F.3d 360, 365 (6th Cir. 2004).  Specifically, this Court has "on occasion applied 'plain error' review to examine the validity of a defendant's waiver of counsel." Id. (collecting cases).  However, "[o]ther panels have approached the waiver-of-counsel issue by omitting discussion of the standard of review and proceeding to engage in a thorough review of the colloquy between the district court judge and the defendant."  Id. (collecting cases).

Because "[p]lain error review applies even if the forfeited assignment of error is a constitutional error," United States v. Cromer, 389 F.3d 662, 672 (6th Cir. 2004) (citations omitted), the government believes that Owens must show that the district court's decision to grant his request for self-representation constituted an error that affected his substantial rights or that implicated the fairness or

21

integrity of judicial proceedings.  See Johnson v. United States, 520 U.S. 461,

466-69 (1997) (elements of plain error review).  Regardless, like United States v.

Williams, 641 F.3d 758 (6th Cir. 2011), "the waiver was proper under either

standard."  Id. at 766.

**B.    Argument**

"The Sixth Amendment guarantees criminal defendants the right to trial

counsel and also the right to proceed without counsel."  Id. at 766 (citing Faretta v.

California, 422 U.S. 806, 835 (1975)).  If a criminal defendant chooses to exercise

his constitutional right to proceed without counsel, he must knowingly and

voluntarily waive the benefits afforded by the right to counsel.  Faretta, 422 U.S.

at 835.  For a defendant to knowingly and voluntarily waive the right to counsel,

he must be "aware of the dangers and disadvantages of self-representation, so that

the record will establish that 'he knows what he is doing and his choice is made

with eyes open.'"  Id. at 835 (quoting Adams v. United States ex rel. McCann, 317

U.S. 269, 279 (1942)).

Consequently, "[w]hen an accused wishes to represent himself, the district

court 'must ask the defendant a series of questions drawn from, or substantially

similar to, the model inquiry set forth in the *Bench Book for United States District

Judges*.'"  Williams, 641 F.3d at 766 (quoting United States v. McBride, 362 F.3d

22

360, 366 (6th Cir. 2004)).  The model inquiry, which appears in an appendix to

United States v. McDowell, 814 F.2d 245, 250 (6th Cir. 1987), includes "thirteen

questions about the defendant's familiarity with the law and legal system, and the

charges against him.  This inquiry must be followed by a strong admonishment

that the court recommends against the defendant trying to represent himself or

herself."  Williams, 641 F.3d at 767.  While McDowell set forth a guide for district

judges, the trial court need not literally adhere to the bench book inquiry; it need

only substantially comply with the guidelines.  United States v. Miller, 910 F.2d

1321, 1324 (6th Cir. 1990); McBride, 362 F.3d at 366.  "Additionally, the district

court must make a finding that the defendant has knowingly and voluntarily

waived his or her right to counsel."  Williams, 641 F.3d at 767.

The record here amply demonstrates that the district court substantially

adhered to the model inquiry in McDowell before finding that Owens knowingly

and voluntarily waived his right to counsel.  Before granting Owens' self-

representation request, the court asked Owens his age and whether he was under

the influence of any drugs, medications or alcohol that might affect his ability to

understand the proceedings.  (R. 41: 8/31/11 Arraignment Tr., PageID 134).  The

court also asked if Owens:

(1) ever represented himself in a criminal matter;

23

(2) ever studied law;

(3) understood the consequences of conviction for a felon in possession charge in violation of 18 U.S.C. § 922(g)(1), namely, a sentence of 15 years to life imprisonment;

(4) was familiar with the Federal Rules of Evidence;

(5) was familiar with the Federal Rules of Criminal Procedure; and

(6) understood "that a trained lawyer would better serve [his] interests in this case."

(Id., PageID 135-38).  Further, as Owens acknowledges, the district court "repeatedly warned him against self-representation."  (Owens' Br., p. 13).  Indeed, the court specifically detailed the dangers of self-representation.  (R. 41: 8/31/11 Arraignment Tr., PageID 138-39, 148, 150; R. 48: 10/26/11 Status Hrg. Tr., PageID 568-71, 574-76, 580; see also generally, R. 43: 11/8/11 Pretrial Tr., PageID 192-93, 195-97).  The court also told Owens that his decision was "unwise" and "a serious error."  (R. 41: 8/31/11 Arraignment Tr., PageID 138-39).  When Owens' changed his mind and again requested to proceed *pro se*, following brief representation by appointed counsel, the court warned Owens that self-representation was "against [his] best interest" (R. 48: 10/26/11 Status Hrg. Tr., PageID 572), and was "not a good decision."  (Id., PageID 578).  Beyond emphasizing the dangers of self-representation, the court pleaded with Owens to

24

reconsider his request.  (See, e.g., R. 41: 8/31/11 Arraignment Tr., PageID 148; R. 43: 11/8/11 Pretrial Tr., PageID 178-79; R. 48: 10/26/11 Status Hrg. Tr., PageID 579).  Hence, the court's questions and repeated admonishments properly complied with McDowell.

Owens' argument that the court erred by not *sua sponte* assessing his mental competency to waive representation is without merit.  This Court rejected a similar claim in United States v. Back, 2008 WL 5046442 (6th Cir. 2008) (unpublished), where, as here, "the record . . . does not give us reason to find that defendant fell within the potential gray area between competency to stand trial and competency to self-represent."  Id. at *2.  Significantly, "Defendant's competency to stand trial was *never* in question, and nothing in the [Supreme] Court's recent opinion[, in Indiana v. Edwards, 554 U.S. 164 (2008),] suggests that a disparity between these two competency standards creates an obligation that the trial court inquire into the defendant's competency to proceed *pro se* in every case in which a defendant wishes to do so."  Id. (emphasis added).  In short, there is no requirement that a trial court conduct a competency determination *sua sponte* before accepting a defendant's waiver of counsel.

Rather, the district court has authority to order a competency hearing any time before sentencing "'if there is *reasonable cause to believe* that the defendant

25

may *presently* be suffering from a mental disease or defect rendering him mentally

incompetent to . . .understand the nature and consequences of the proceedings

against him or to assist properly in his defense.'" Id. at *3 (quoting 18 U.S.C. §

4241(a) (emphasis added)).  Like Back, however, "defendant fails to point to

anything in the record that would indicate that 'there was reasonable cause' for the

district court to suspect that he was mentally incompetent." Id.  Owens may have

made a poor strategic decision in deciding to represent himself.  An unwise

decision, however, is not an incompetent one.  Otherwise, the right to self-

representation, which almost always is unwise to assert, would be rendered

meaningless.

Moreover, Owens cannot bootstrap the presentence report's post-trial

description of Owens' mental history as evidence that he was suffering a mental

disease when he waived counsel before trial.  Simply put, when Owens waived

counsel before trial, "[t]here was no indication that [defendant] had any apparent

physical or psychological disorders, and no one indicated that [he] might be

incompetent."   United States v. Word, 1995 WL 730476, *1 (6th Cir. 1995)

(unpublished).  Hence, "the district court had no reason to question defendant's

competence." Back, 2008 WL 5046442 at *3.

26

Owens attempt to distinguish <u>Back</u> because the defendant there "invested significant time in legal research and he exhibited a clear understanding of the statutes he is accused of violating, as well as familiarity with the United States Sentencing Guidelines" (Owens' Br., p. 15 (quoting <u>Back</u>, 2008 WL 5046442 at *3)), is misplaced.  <u>Back</u>'s legal research was not the basis for this Court's decision rejecting his claim about the district court "not ordering a competency hearing." <u>Back</u>, 2008 WL 5046442 at *2.  Further, the record reflects that Owens also conducted legal research.  (R. 41: 8/31/11 Arraignment Tr., PageID 129, 136; R. 43: 11/8/11 Pretrial Tr., PageID 166).  Regardless, as this Court stated in <u>Back</u>, the defendant's "technical legal knowledge . . . was not relevant to an assessment of his knowing exercise of the right to defend himself." <u>Id.</u> at *2.  The same is true here.

Owens' emphasis on his misunderstanding of procedural issues (R. 41: 8/31/11 Arraignment Tr., PageID 132-33; R. 43: 11/8/11 Pretrial Tr., PageID177), falls far short of showing that reasonable cause existed for the court to question Owens' mental competence, as one would expect similar misunderstandings by any layperson representing himself.  Such misunderstandings are an inherent danger of representing oneself, but the district court warned about that danger.  Further, Owens' comments about the ammunition not pertaining or belonging to

27

him, were, as the district court correctly recognized, "part of [his] defense" (R. 43:

11/8/11 Pretrial Tr., PageID 177), namely, that the ammunition inside the back

pocket of the sweatpants he was wearing when frisked allegedly belonged to his

ex-girlfriend. His defense, while rejected by the jury, does not demonstrate mental

incompetence, however. Additionally, Owens' argument that the he did not cross

state lines with the ammunition (id., PageID 165), reflected an argument that

Section 922(g)(1) exceeds Congress' authority under the Commerce Clause, which

even represented defendants have made on appeal. See, e.g., United States v.

Jemison, 2009 WL 383683, *11 (6th Cir. 2009) (unpublished); United States v.

Henry, 429 F.3d 603, 619 (6th Cir. 2005); United States v. Chesney, 86 F.3d 564,

567-72 (6th Cir. 1996).

Moreover, as recognized by this Court, "a defendant need not himself have

the skill and experience of a lawyer in order competently and intelligently to

choose self-representation." McDowell, 814 F.2d at 249; accord id. at 250. This

Court has further recognized that, "[t]o suggest that an accused, who knows and

appreciates what he is relinquishing and yet intelligently chooses to forego

counsel and represent himself, must still have had some formal education or

possess the ability to converse in English is, we think, to misunderstand the thrust

of Faretta and the constitutional right it recognized." Id. at 250.

28

Indeed, "[t]he <u>Farretta</u> Court assumed that the overwhelming majority of laymen who defend themselves in a criminal action will fare worse than those represented by skilled counsel." <u>Id.</u>  Nevertheless, a defendant has the right "to face the charges alone . . . by attempting to defend himself.  The *only* condition on this right is that it be asserted by the accused with his 'eyes open,'" which the record demonstrates occurred here.  <u>Id.</u> (emphasis in original).

As this Court has observed, "while a criminal defendant who proceeds *pro se* may, like any other *pro se* litigant, have a fool for a client, that does not mean that he or she is presumptively incompetent." <u>Back</u>, 2008 WL 5046442 at *3 (referencing <u>Godinez v. Moran</u>, 509 U.S. 389, 401 n.13 (1993)).  Further, although Owens' depression and past suicidal behavior, discussed for the first time in court during sentencing, are serious conditions, Owens does not demonstrate that the conditions rendered him mentally incompetent to understand the proceedings against him or engage in self-representation.  Indeed, "[t]he record does not indicate that defendant suffered from any pervasive mental disorder which would interfere with his decision-making ability.  Notwithstanding his unfortunate personal life and understandable emotional reactions, nothing in the record indicates that the district court's determination was erroneous." <u>United States v.</u>

29

Alkazoff, 1992 WL 180179, *4 (6th Cir. 1992) (unpublished) (internal citation omitted).

"While defendant's decision may have been ill-advised, the district court did enough to ascertain that defendant was capable of understanding the consequences of his course of action." Back, 2008 WL 5046442 at *3. Further nothing about the trial record shows, much less suggests, that the district court had a reasonable cause to believe that Owens was not mentally competent. Owens' dissatisfaction with the jury's verdict does not demonstrate that his waiver of counsel was not knowing and voluntary. In sum, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" McDowell, 814 F.2d at 251 (quoting Faretta, 422 U.S. at 834 n.46). There was no error in the court's finding that Owens knowingly and voluntarily waived his right to counsel.

30

## II.  THE EVIDENCE SUFFICIENTLY ESTABLISHED THAT OWENS KNOWINGLY POSSESSED THE AMMUNITION FOUND IN THE BACK POCKET OF THE SWEATPANTS HE WAS WEARING.

### A.  Standard of Review

Although this Court has stated that sufficiency of the evidence claims are reviewed *de novo*, United States v. Graham, 622 F.3d 445, 448 (6th Cir. 2010), "a defendant claiming insufficiency of the evidence bears a very heavy burden." United States v. Abboud, 438 F.3d 554, 589 (6th Cir. 2006).  There is "a strong presumption in favor of sustaining a jury conviction."  United States v. Peters, 15 F.3d 540, 544 (6th Cir. 1994).  As the Supreme Court has held, the test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Graham, 622 F.3d at 448.

Both circumstantial and direct evidence must be viewed in a light most favorable to the government.  United States v. Humphrey, 279 F.3d 372, 378 (6th Cir. 2002).  Circumstantial evidence alone is sufficient to support a conviction. United States v. Blackwell, 459 F.3d 739, 760 (6th Cir. 2006); United States v. Prince, 214 F.3d 740, 746 (6th Cir. 2000).

31

Since the government prevailed below, it must be given the benefit of all reasonable inferences from the testimony.  Graham, 622 F.3d at 448; United States v. McAuliffe, 490 F.3d 526, 537 (6th Cir. 2007); United States v. Villarce, 323 F.3d 435, 438 (6th Cir. 2003).  An appellate court may not re-weigh the evidence, reconsider the credibility of witnesses or substitute its judgment for that of the jury.  Graham, 622 F.3d at 448; United States v. Hughes, 505 F.3d 578, 592 (6th Cir. 2007).  Further, appellate attacks on witness credibility invade the jury's province and are improper attacks on the quality, rather than the sufficiency, of the evidence.  Graham, 622 F.3d at 449.

**B.    Argument**

 Owens argues that the evidence is insufficient to sustain his conviction for being a felon in possession of ammunition.  To obtain a conviction under 18 U.S.C. § 922(g)(1), the government was required to prove beyond a reasonable doubt: "(1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the . . . ammunition specified in the indictment; and (3) that the possession was in or affecting interstate commerce." United States v. Schreane, 331 F.3d 548, 560 (6th Cir. 2003). Owens does not challenge the

32

government's proof on the first and third elements.  Rather, he claims that the evidence did not establish that he knowingly possessed the ammunition.

A Section 922(g)(1) "conviction may be based on actual or constructive possession of a firearm."  United States v. Campbell, 549 F.3d 364, 374 (6th Cir. 2008) (constructive possession case).  This Court has explained that "[a]ctual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." Id. (internal quotation marks and citation omitted).  Further, "[p]ossession can be proven by either direct or circumstantial evidence."  Id.; see also United States v. Reed, 141 F.3d 644, 651 (6th Cir. 1998).

Here, the evidence overwhelmingly established that Owens physically possessed the ammunition.  The evidence showed that a frisk, conducted after Owens fled and police found him hiding in a yard of an abandoned house, revealed a magazine for a semi-automatic handgun in the back pocket of the sweatpants Owens was wearing.  (R. 46: Ladner, 11/22/11 Trial Tr., PageID 414; R. 46: Martinek, 11/22/11 Trial Tr., PageID 423).  The magazine was loaded with 12 bullets.  (R. 46: Martinek, 11/22/11 Trial Tr., PageID 423).

33

Beyond the ammunition's presence on Owens' person, other incriminating evidence included the fact that, before police found Owens and seized the magazine, Owens accelerated in the vehicle he was driving and fled when police attempted to conduct a traffic stop.  (R. 46: Weber, 11/22/11 Trial Tr., PageID 395-96, 398, 400).  Owens then exited the vehicle while it was still moving and continued fleeing on foot.  (Id.).  The fact that Owens ran and "jump[ed] several fences" (id., PageID 399), while fleeing was particularly significant, given that that the loaded magazine was in the back pocket of the sweatpants Owens was wearing.  As the prosecutor noted during closing argument, sweatpants "are very loose-fitting.  If you have something like a magazine loaded with bullets, that would have been hitting up against his [Owens'] leg every step he took."  (R. 46: 11/22/11 Trial Tr., PageID 496-97).

Beyond the implausibility of Owens not noticing the loaded magazine when fleeing from police, the testimony of Wilson, to whom the sweatpants and magazine allegedly belonged, was contradicted by the other evidence.  Indeed, Vouvalis, who examined the ammunition that Yuricek unloaded from the seized magazine (R. 46: Yuricek, 11/22/11 Trial Tr., PageID 429-31, 435; R. 46: Vouvalis, 11/22/11 Trial Tr., PageID 440), testified that Government Exhibit 2 contained several different types of bullets.  (R. 46: Vouvalis, 11/22/11 Trial Tr.,

34

PageID 440-44).  Vouvalis also testified that the variation in colors indicated that the ammunition came from different boxes.  (Id., PageID 441-42).  Wilson, however, testified that she only purchased a single box of ammunition that she used to load all three magazines.  (R. 46: Wilson, 11/22/11 Trial Tr., PageID 457-58).  Thus, Wilson's testimony about the single box of ammunition was contradicted squarely by the physical evidence and the jury properly discredited her.

This glaring inconsistency further underscored the questionable plausibility of Wilson's testimony about inadvertently leaving her third magazine clip in the pocket of her sweatpants, which were folded in the backseat of her vehicle, when selling her gun and the clips to a friend of a friend, as well as Wilson's claim that Owens coincidentally borrowed her vehicle that night and changed into her sweatpants containing the forgotten magazine.  (Id., PageID 451, 453, 456-60).  Under the totality of the circumstances, the jury was entitled to disbelieve Wilson and reject Owens' defense denying any knowledge about the ammunition in the pocket of the sweatpants he was wearing.  The evidence was sufficient to support Owens' conviction for being a felon in possession of ammunition.

35

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this

Court affirm the Owens' conviction.

<div style="margin-left:40%">

Respectfully submitted,

STEVEN M. DETTELBACH .
United States Attorney

By:    /s/Laura McMullen Ford
        Laura McMullen Ford
        Assistant U.S. Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, Ohio  44113
        Telephone No: (216) 622-3817
        Facsimile No: (216) 522-7358
        Laura.Ford@usdoj.gov

Counsel for Plaintiff-Appellee

</div>

36

**CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION**

I hereby certify that the foregoing contains 6,721 words according to the word counting feature of WordPerfect X5 and complies with this Court's 14,000 word limitation for briefs.

/s/ Laura McMullen Ford
Laura McMullen Ford
Assistant United States Attorney

37

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October 2012, a copy of the

foregoing Brief of Plaintiff-Appellee, was filed electronically.  Notice of this filing

will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/  Laura McMullen Ford
Laura McMullen Ford
Assistant United States  Attorney

38

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b), the following filings from the district

court's records are designated as relevant to this appeal:

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. | PAGE ID RANGE |
|---|---|---|
| Docket Sheet, Northern District of Ohio, Case No. 4:11CR294 | N/A | N/A |
| Indictment | 1 | 1-2 |
| Verdict | 25 | 100 |
| Minutes | 33 | 112 |
| Judgment | 34 | 113-18 |
| Notice of Appeal | 35 | 119-20 |
| Transcript of Arraignment Held on 8/31/11 | 41 | 127-153 |
| Transcript of Pretrial Hearing Held on 10/11/11 | 42 | 154-59 |
| Transcript of Pretrial Hearing Held on 11/8/11 | 43 | 160-201 |
| Transcript of Trial Held on 11/21/11 | 45 | 379-92 |
| Transcript of Trial Held on 11/22/11 | 46 | 393-521 |
| Transcript of Sentencing Held on 3/28/12 | 47 | 522-60 |
| Transcript of Status Hearing held on 10/26/11 | 48 | 561-85 |
| Presentence Report | N/A | N/A |